## Sharpless Brothers, Appellants, *v.* Charles Francis Gummey, Jr.

*Sale—Rescission—Fraud—Evidence.*

Statements as to financial standing made by a purchaser of goods to a mercantile agency, two and one-half years before the purchase, even though untrue, are not sufficient evidence of fraud to submit to the jury as a justification of the right of the seller of the goods to rescind the sale.

Argued Jan. 8, 1895. Appeal No. 455, Jan. T., 1894, by plaintiffs, from order of C. P. No. 2, Philadelphia Co., March T., 1892, No. 245, entering nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Affirmed.

Replevin. Before FELL, J.

At the trial it appeared that defendant was the assignee for the benefit of creditors of Marietta Heller, trading as Adolph Heller. On Oct. 29, 1891, and thereafter, plaintiffs sold to Mrs. Heller considerable quantities of dry goods. Plaintiffs claimed that they had made the sales relying upon statements which she had made to Bradstreet's Mercantile Agency on April 30, 1889. After Mrs. Heller's assignment plaintiffs issued a writ

of replevin, and took possession of the goods found in defendant's possession, that had been sold to Mrs. Heller by them. The statement made by Mrs. Heller to the Mercantile Agency was reported by the agency to plaintiffs, as follows:

" HELLER, ADOLPH, Dry Goods, Millinery, &c.,
(Marietta Heller, Sole Proprietor), Philadelphia, Pa.
N. E. Cor. 8th and Arch Sts.

" The following was declared by Mrs. Heller to accurately represent her condition April 30, 1889:

| | |
|---|---:|
| "Stock on hand, | $120,000.00 |
| Accounts Rec. good, | 5,000.00 |
| Portion of building occupied (free from encumbrance) including machinery, etc., | 95,000.00 |
| Cash on hand, | 15,000.00 |
| | $235,000.00 |
| Merchandise liabilities, | 25,000.00 |
| Net worth, | $210,000.00 |

No borrowed money."

The above was the result of an interview with Mrs. Heller. When a statement was asked, she referred the matter to her son, David Heller, stating that he was the financial manager of the concern. The above statement was made by the son, and the amounts were afterwards stated by Mrs. Heller to be a correct statement of her condition, both in detail and in the net result. She closed the interview saying, " I am worth about $200,000 clear."

Plaintiffs offered evidence which tended to show that on April 30, 1889, Mrs. Heller's merchandise account showed a balance of only $55,602, while the cash account showed a balance of only $8,193.50. Other evidence in the case showed that Mrs. Heller after 1889 conducted a very extensive business.

Under date of Oct. 30, 1889, the mercantile agency reported as follows: " Authorities are not informed of any material change in her condition. She appears to do a fair trade, but authorities do not appear to believe that she has made money during the past season. She is said to be under considerable

expense, and a very large business will have to be transacted before she begins to add to her capital. The general opinion of those consulted is that Mrs. Heller has undertaken an enterprise of considerable magnitude, which will call for the employment of a large capital and possession of rather more than average business ability to bring it to the degree of success evidently sought after. There appears a disposition to closely watch the progress of this business, and some have not ceased to regard it as an experiment which will need time to prove its success. Her present dealings believed principally in New York; locally she is sold reasonably and payments are said to be made in short time. Authorities consider from $75,000 to $100,000 a fair estimate of her means."

In February, 1890, plaintiffs began to sell and deliver goods to Mrs. Heller, and sold her several thousands of dollars' worth between then and the date of the failure in December, 1891. Mrs. Heller paid for all the goods she bought from the plaintiffs prior to Oct. 19, 1891. When she failed she owed plaintiffs $1,800. The goods replevied were a part of those sold after Oct. 19th.

The court entered a compulsory nonsuit, and subsequently refused to take it off.

*Error assigned* was refusal to take off nonsuit.

*James Collins Jones* and *Lewin W. Barringer*, for appellants, cited: Hill v. Trust Co., 108 Pa. 1; Pollock on Torts, 262; Eaton v. Avery, 83 N. Y. 31; Genesee Bank v. Barge Co., 52 Mich. 164; Hinchman v. Weeks, 85 Mich. 535; Holmes v. Harrington, 20 Mo. Ap. 661.

*M. Hampton Todd*, for appellee, cited: Hotchkins v. Bank, 11 N. Y. Sup. 220, 806; Macullar v. McKinley, 99 N. Y. 358; Wessels v. Weiss Bros., 156 Pa. 591; Rodman v. Thalheimer, 75 Pa. 232; Smith v. Smith, 21 Pa. 367.

PER CURIAM, Jan. 21, 1895:

We have considered the testimony, of which the compulsory nonsuit in this case is predicated, and are satisfied that the learned trial judge rightly held it was insufficient to justify

submission of the case to the jury.   There is no such evidence of fraud as would warrant any trial court in sustaining a verdict in favor of the plaintiffs.   That being so, there was no error in entering the judgment of nonsuit, and afterwards refusing to take it off.

Judgment affirmed.